UNITED STATES of America,
Plaintiff–Appellee,

v.

Raymond TORRES, Joseph S. Aflleje,
and Barbara Aflleje–Torres,
Defendants–Appellants.

Nos. 94–6128, 94–6140, and 94–6152.

United States Court of Appeals,
Tenth Circuit.

April 25, 1995.

Certiorari Denied June 19, 1995.

See 115 S.Ct. 2599.

Frank Michael Ringer (Rozia McKinney–Foster, U.S. Atty., with him, on the brief), Asst. U.S. Atty., Oklahoma City, OK, for plaintiff-appellee.

Michael G. Katz, Federal Public Defender, and Susan L. Foreman, Asst. Federal Public Defender, Denver, CO, on the briefs for Raymond Torres; Raymond Torres filed a pro se supplemental opening brief.

Jerome T. Kearney, Asst. Federal Public Defender, Oklahoma City, OK, for Joseph S. Aflleje.

Thomas D. McCormick, Oklahoma City, OK, on the brief, for Barbara Aflleje–Torres.

Before BRORBY, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and OWEN,* Senior District Judge.

BRORBY, Circuit Judge.

Defendants-appellants Joseph Aflleje, Barbara "Bobbie" Aflleje–Torres, and Raymond Torres (collectively "the defendants") were convicted of multiple drug-related offenses. They appeal, challenging their respective convictions and sentences. We treat their appeals together in a single, consolidated opinion because they stem from a common set of facts. *See* Fed.R.App.P. 3(b). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm in part, reverse in part, and remand in part for resentencing.

## BACKGROUND

On October 19, 1993, a federal grand jury for the Western District of Oklahoma issued a seventeen count indictment charging the defendants with conspiracy to possess with intent to distribute methamphetamine, and conspiracy to distribute methamphetamine; distribution of methamphetamine and aiding and abetting the same; interstate travel in aid of racketeering; use of a communication facility to facilitate the distribution of methamphetamine; and money laundering. After the trial court granted motions for judgment of acquittal on five counts, the remaining counts were submitted to the jury, and the defendants were thereafter convicted on each count. The court sentenced Joseph Aflleje to 210 months imprisonment, while Barbara Aflleje–Torres and Raymond Torres each received 151 months imprisonment.

Construing the facts in the light most favorable to the government, the evidence reveals the following. Joseph Aflleje and his wife, and later ex-wife, Irene Aflleje, along with Mr. Aflleje's sister, Barbara Aflleje, and her husband Raymond Torres, were involved in a closely knit methamphetamine distribution ring. Most of the government's information about the defendants' drug operation was learned through the assistance of four accomplices—Irene Aflleje, her boyfriend Joe Clyde McLemore, Judy Ford, who was Mr. Aflleje's ex-girlfriend, and Shirley Brown—each of whom elected to plead guilty to lesser offenses in exchange for their agreement to cooperate with the authorities. The government's case against the defendants consisted of the testimony of these individuals, along with the testimony of several federal agents.

The government alleged the defendants were involved in a four-tiered vertically integrated drug conspiracy. Joseph Aflleje, the head of the methamphetamine distribution ring, would obtain quantities of methamphetamine from his suppliers in California, and he would then sell the drugs to Barbara Aflleje–Torres and Raymond Torres, who would sell them to Irene Aflleje and Joe McLemore, who eventually sold them directly to various buyers, including Shirley Brown. In May 1992, Barbara Aflleje–Torres and Raymond Torres left the United States to return to Guam, where they were born, because they were involved in private litigation concerning the ownership of a parcel of land located in Guam. When the Torreses left the country, the operation was reduced to three tiers, with Joseph Aflleje distributing directly to Irene Aflleje and Joe McLemore, who resold the drugs to buyers.

* The Honorable Richard P. Owen, Senior United States District Judge for the Southern District of New York, sitting by designation.

The government alleged the defendants started this conspiracy to distribute methamphetamine in late 1989 and that it continued through the middle of 1992. Much of the evidence used to convict the defendants took the form of drug ledgers, notebooks, and calendars detailing many of these drug dealings. According to the testimony of Irene Aflleje, she kept these ledgers because most of the drugs she obtained from Barbara Aflleje–Torres and Raymond Torres in 1992 were fronted[1] to her, and the ledgers enabled her to keep track of both how much money she owed her suppliers and what quantities of drugs were being bought and ultimately resold. While these ledgers provided damaging evidence against Barbara Aflleje–Torres and Raymond Torres, they did not contain any references to Joseph Aflleje. Irene Aflleje testified, however, that Joseph Aflleje never fronted drugs to his direct buyers because he demanded that the money be mailed or wired to him at the same time he would supply the drugs. While the ledgers did not constitute evidence against Mr. Aflleje, the government introduced the testimony of the accomplices who testified they had been involved in personal drug dealings with him.

On July 6, 1992, shortly before this conspiracy ended, Shirley Brown was arrested in Lawton, Oklahoma, by members of the Comanche County Drug Task Force, working in conjunction with Agent Kenneth McCullough of the United States Drug Enforcement Agency. Ms. Brown subsequently agreed to cooperate with the authorities. She informed the agents that a Federal Express package containing drugs was being sent to an address in Lawton, Oklahoma, in the near future. Three days later, after this package arrived at the Federal Express office, law enforcement personnel obtained a search warrant from an Oklahoma court judge and took the package to the Oklahoma State Bureau of Investigation. The substance inside the package tested positive as methamphetamine. The officials then repackaged the drugs and prepared to make a controlled

delivery of the package, which was addressed to the residence of Irene Aflleje and Joe Clyde McLemore. When this controlled delivery was made, officials arrested Irene Aflleje and Joe McLemore. They, along with Ms. Brown, subsequently agreed to cooperate, eventually resulting in the arrest, prosecution, and convictions of the defendants.

The primary defense strategy at trial was an effort to discredit the testimony of the defendants' accomplices who testified for the prosecution. Defense counsel thoroughly attempted to impugn the credibility of these witnesses by raising their drug use and their plea agreements, as well as emphasizing their overall unreliability as witnesses. This tactic ultimately proved unsuccessful, however, as the jury convicted the defendants on all twelve counts. This appeal ensued.

## DISCUSSION

The defendants raise various challenges to the sufficiency of the evidence, to certain evidentiary rulings, and to several sentencing determinations.

### I. Sufficiency of the Evidence

■ The defendants first challenge the sufficiency of the evidence to support their convictions on most, if not all, of the counts on which they were convicted. In reviewing the sufficiency of the evidence:

> We view the evidence in the light most favorable to the government in order to determine whether all of the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, 'convinces us that a rational factfinder could reasonably have found' the appellant guilty of the crime charged beyond a reasonable doubt.

*United States v. Chavez–Palacios,* 30 F.3d 1290, 1293–94 (10th Cir.1994) (quoting *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979)). "[T]he evidence presented to support the conviction

---

**1.** The term "fronted," as used in the drug trade, refers to situations when a seller of drugs gives the drugs to a buyer on credit with the understanding that when the buyer resells the drugs to the customers, the proceeds of those sales are to be used to pay the supplier. *See United States v. Mosley,* 965 F.2d 906, 908 (10th Cir.1992).

**1134**

must be substantial; that is, it must do more than raise a mere suspicion of guilt." *United States v. Sanders,* 928 F.2d 940, 944 (10th Cir.), *cert. denied,* 502 U.S. 845, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991) (internal quotations omitted). In determining whether there was in fact some evidence in the record to support the jury's verdict, *see United States v. Hoenscheidt,* 7 F.3d 1528, 1530 (10th Cir.1993), we review the record *de novo. See United States v. Grimes,* 967 F.2d 1468, 1472 (10th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992). Moreover, "[a]n appellate court may not decide the credibility of witnesses as that is the exclusive task of the fact trier.... Once the jury has spoken, this court may not reweigh the credibility of the witnesses." *United States v. Youngpeter,* 986 F.2d 349, 352–53 (10th Cir.1993); *see also United States v. Uresti–Hernandez,* 968 F.2d 1042, 1045 (10th Cir.1992) ("Credibility determinations are for the jury, not the appellate court"). By viewing the evidence in the light most favorable to the government, we necessarily assume the jury found the government's evidence credible.

### A. Conspiracy

Joseph Aflleje and Barbara Aflleje–Torres challenge their convictions on count one for conspiracy to possess with intent to distribute methamphetamine, and conspiracy to distribute methamphetamine, under 21 U.S.C. § 846.[2]

> "A conspiracy conviction requires the Government to prove, [1] that two or more persons agreed to violate the law, [2] that the defendant knew at least the essential objectives of the conspiracy, [3] that the defendant knowingly and voluntarily became a part of it, and [4] that the alleged coconspirators were interdependent."

*United States v. Angulo–Lopez,* 7 F.3d 1506, 1510 (10th Cir.1993) (citing *United States v. Evans,* 970 F.2d 663, 668 (10th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993)), *cert. denied,* —.U.S. ——, 114 S.Ct. 1563, 128 L.Ed.2d 209 (1994).

#### 1. Joseph Aflleje

Mr. Aflleje claims the government failed to provide any direct evidence of a conspiracy to support his conviction. Specifically, he contends the only direct evidence offered by the government fails to tie him to any alleged conspiracy. He claims the July 9, 1992, Federal Express package did not have his fingerprints on it, there were no recorded phone calls mentioning him, there were no undercover buys in which he was involved, and his name did not appear in Irene Aflleje's drug ledger or calendar. While Mr. Aflleje recognizes that Irene Aflleje, Shirley Brown, Joe McLemore and Judy Ford each testified he had supplied them with methamphetamine for personal use and for resale, he attempts to overcome this testimony by arguing that it is not credible.

Mr. Aflleje's initial argument regarding the lack of any direct evidence of conspiracy is without merit for two reasons. First, it ignores the testimony of Agent Joseph Leszczynski of the DEA, who testified Mr. Aflleje confessed during an interview in the Comanche County Jail on October 22, 1993, after an advisement and waiver of his *Miranda* rights. The substance of the confession, as recounted by Agent Leszczynski, was that Mr. Aflleje and Judy Ford would obtain methamphetamine in California and then send it to individuals in Oklahoma for distribution. This testimony provides some direct evidence that Mr. Aflleje was involved in a conspiracy to distribute methamphetamine.

Second, and perhaps more importantly, Mr. Aflleje's argument does not recognize the general principle that "[a]n agreement constituting a conspiracy may be inferred from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose." *United States v. Johnson,* 42 F.3d 1312, 1319 (10th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1439, 131 L.Ed.2d 318 (1995); *see also United States v. Robertson,* 45 F.3d 1423, 1442 (10th Cir.1995) (proof of a

**2.** 21 U.S.C. § 846 provides "[a]ny person who ... conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the ... conspiracy."

conspiracy "must often be, and may legitimately be, proved by circumstantial evidence"). Appellate review of the sufficiency of the evidence requires us to consider all of the evidence in the record, both direct and circumstantial. Therefore, the absence of any direct evidence of a conspiracy is immaterial so long as there is sufficient circumstantial evidence of a conspiracy to support a finding of guilt beyond a reasonable doubt. *See United States v. Thurston*, 771 F.2d 449, 452 (10th Cir.1985) (in reviewing the sufficiency of the evidence, "[c]ircumstantial evidence is entitled to the same weight as that given to direct evidence"). Mr. Aflleje does not contend the testimony of the accomplices, who testified as to their personal drug dealings with Mr. Aflleje, is legally insufficient to support his conspiracy conviction, and we therefore reject this claim. Furthermore, Mr. Aflleje's argument that the accomplices' testimony cannot support his conviction because it is not credible merits no discussion. *See Youngpeter*, 986 F.2d at 352–53.

### 2. Barbara Aflleje–Torres

■ The full extent of Ms. Aflleje–Torres' argument as to why the evidence was insufficient to support her conviction is that the evidence against her "came from the cooperating witnesses for the government in that they alleged the defendant was dealing drugs with them." Because this argument merely raises an issue regarding the credibility of the government's witnesses, rather than a claim that the government failed to carry its burden of proving an essential element of this crime, we summarily reject this contention. *See Youngpeter*, 986 F.2d at 352–53.

### B. Distribution

The defendants next challenge their convictions on counts three, four, and five, which are substantive counts of distribution of methamphetamine under 21 U.S.C. § 841(a)(1), and aiding and abetting the same under 18 U.S.C. § 2.[3] "Pursuant to the plain language of § 841(a)(1), the essential elements of a *prima facie* case of distribution of a controlled substance are: (1) knowing or intentional; (2) distribution; (3) of a controlled substance." *United States v. Santistevan*, 39 F.3d 250, 255 (10th Cir.1994).

### 1. Joseph Aflleje

■ Count five charged Mr. Aflleje with distributing methamphetamine, while counts three and four charged him with aiding and abetting Barbara Aflleje–Torres and Raymond Torres in distributing methamphetamine. The foundation for count five surrounds the Federal Express package sent by Judy Ford to Irene Aflleje and Joe McLemore. Judy Ford testified that Mr. Aflleje gave her eight ounces of methamphetamine and directed her to send the drugs by Federal Express to Irene Aflleje and Joe McLemore. Irene Aflleje and Agent McCullough also testified as to the circumstances surrounding the delivery of this Federal Express package in Oklahoma. There was also testimony that Mr. Aflleje and Ms. Ford received compensation from Irene Aflleje before Irene Aflleje received the methamphetamine. All of this evidence, viewed in the light most favorable to the government, is sufficient to support Mr. Aflleje's conviction on count five.

■ Counts three and four charged Mr. Aflleje with aiding and abetting Barbara Aflleje–Torres and Raymond Torres in the distribution of methamphetamine. The essence of aiding and abetting liability is proof the defendant willfully associated with a criminal venture and sought through some affirmative action to make that venture succeed. *See, e.g., United States v. Jones*, 44 F.3d 860, 869 (10th Cir.1995); *United States v. Hanson*, 41 F.3d 580, 582–83 (10th Cir. 1994). In this case, the drug ledger contains information that Mr. Aflleje sold drugs to Barbara Aflleje–Torres and Raymond Torres who then brought those drugs to Irene Aflleje on May 8, 1992,[4] (count three) and

---

**3.** 21 U.S.C. § 841(a)(1) provides "it shall be unlawful for any person knowingly or intentionally—to ... distribute ... a controlled substance." 18 U.S.C. § 2(a) provides "[w]hoever ... aids, abets, counsels, commands, induces or procures

[the commission of an offense against the United States], is punishable as a principal."

**4.** While the indictment alleged the events underlying count three occurred "[o]n or about May 1,

June 10, 1992 (count four). Nonetheless, Mr. Aflleje argues "[n]o evidence was produced to corroborate ... those dates. It is nothing more than uncorroborated, self-serving speculation." Counsel has cited no authority in support of this argument. Moreover, because this argument implicitly concedes the existence of some evidence to support the conviction, and because it again turns on the jury's assessment of the credibility of these witnesses, we find no merit to these claims.

### 2. Barbara Aflleje–Torres

Counts three and four charged Barbara Aflleje–Torres with distribution of methamphetamine. In her brief, however, she acknowledges there is some testimony in the record bearing on these two counts. She makes no attempt to identify the precise basis for her claim that the evidence was insufficient. Because we must credit the evidence in the record in reviewing the sufficiency of the evidence on appeal, *see Youngpeter,* 986 F.2d at 352–53, we find this testimony sufficient to support her two convictions under § 841(a)(1).

### 3. Raymond Torres

Mr. Torres, who was convicted on counts three and four of distributing methamphetamine, only challenges the sufficiency of the evidence as to count three. He argues the only evidence bearing on this count was the testimony of Irene Aflleje, and that her testimony implicated only Barbara Aflleje–Torres in this transaction, and not him. Thus, he contends the evidence was insufficient to establish his liability as either a principal or an aider and abettor. We agree.

The only evidence bearing directly on count three was the testimony of Irene Aflleje. Her testimony regarding a drug distribution in the early part of May 1992 was as follows:

Q. Look [in the ledger] in May, about the 8th of May. What happened there?

A. It says I paid $900 on 5–8–92.

Q. What was that $900 for?

A. I had given *her* money to pay for methamphetamines that were being sold.

. . . .

Q. Then on—and that happened on 5–8 you made that payment?

A. Yes.

Q. When did you get the amount—when did you owe *her* the amount of 10,000–plus dollars? When was that approximately?

A. It would be—the 10,000 I owed *her* before I paid *her* the 900 would have been just a few days before.

(Emphasis added). At no time does Irene Aflleje refer to Mr. Torres in this colloquy. In addition, Mr. Torres' uncontroverted testimony was that he was in Guam as of May 1, 1992, and thus, he could not have been present during the May 8th transaction to hand deliver the drugs, as was customary, to Irene Aflleje. The evidence simply fails to connect Mr. Torres to the events charged in count three of the indictment, as either a principal or as an aider and abettor. Accordingly, we find insufficient evidence on which to uphold this conviction.

### C. Money Laundering

The defendants next challenge their convictions for money laundering under 18 U.S.C. § 1956(a)(1)(A)(i).[5] In order to sustain a money laundering conviction under § 1956(a)(1)(A)(i), the government must prove the defendant "1) conducted or attempted to conduct a financial transaction, 2) which the defendant then knew involved the proceeds of unlawful activity, 3) with the intent to promote or further unlawful activity." *United States v. Puig-Infante,* 19 F.3d 929, 937 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 180, 130 L.Ed.2d 115 (1994); *accord United States v. Cruz,* 993 F.2d 164,

1992," the government acknowledged that the correct date of these events was in fact May 8, 1992, and not May 1, 1992.

5. 18 U.S.C. § 1956(a)(1)(A)(i) provides "[w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some

form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—with the intent to promote the carrying on of specified unlawful activity" commits a federal offense.

167 (8th Cir.1993) (citing *United States v. Montoya,* 945 F.2d 1068, 1076 (9th Cir.1991)).

### 1. Joseph Aflleje

Mr. Aflleje contends his five money laundering convictions must be reversed because the government failed to prove the money in question was the proceeds of an unlawful activity, and that even if there is sufficient evidence of this fact, there was no evidence he had knowledge those proceeds were in fact derived from an unlawful activity. Because the evidence supports contrary inferences, we reject these claims of error.

■ The government relies on the testimony of Irene Aflleje to rebut Mr. Aflleje's claim of insufficient evidence. She testified she wired funds to Mr. Aflleje on five separate occasions, thus forming the basis for the five money laundering counts against him. While they were married, she stated their source of income was Mr. Aflleje's $1,300 disability check; but it was not enough to meet their mortgage payments and "to keep [them] living." Mr. Aflleje then told her he knew of a way "to make some extra money" by "[s]elling methamphetamines." Their methamphetamine business resulted in increased cash flow, and Irene Aflleje testified that after they were divorced, she was able to obtain money to wire to Mr. Aflleje to pay for drugs from her own methamphetamine business.

The government thus attempted to show, through circumstantial evidence, that Mr. Aflleje knew these funds were the proceeds of an unlawful activity by relying on his financial condition, along with the testimony of Irene Aflleje regarding earlier statements he had made to her. With respect to Mr. Aflleje's financial condition, the government also offered the testimony of Special Agent Larry Morgan of the Internal Revenue Service. Agent Morgan testified that his review of Mr. Aflleje's financial records led him to conclude Mr. Aflleje did not have a legal source of income and that the money underlying the wire transfers from Irene Aflleje to him was not generated by any legal source of income. Agent Morgan's testimony would not be sufficient, standing alone, to support a money laundering conviction under § 1956. *See Puig–Infante,* 19 F.3d at 940. But his expert testimony, coupled with the testimony of Irene Aflleje, is sufficient to permit a jury to infer Mr. Aflleje knew the wire transfers in this case involved the proceeds of an unlawful drug trafficking business. *Id.* Therefore, we find sufficient evidence to support these convictions.[6]

### 2. Barbara Aflleje–Torres

Ms. Aflleje–Torres argues the evidence is insufficient to support her conviction on count eight for money laundering. She claims the testimony of Judy Hoke, a DEA agent whose testimony implicated her in this crime, is inadequate to tie her to the alleged money laundering. Specifically, while Agent Hoke testified as to a wire transfer from Irene Aflleje to Raymond Torres, neither her testimony nor the wire transfer make any mention of Barbara Aflleje–Torres. The government does not directly dispute this characterization of Agent Hoke's testimony, but argues that Ms. Aflleje–Torres is nonetheless responsible for this alleged act of money laundering because at that time, she was acting in concert with her husband Raymond Torres to distribute drugs. The government also asserts that because Barbara Aflleje–Torres was the person who requested that Irene Aflleje make the wire transfers, her culpability is established as an aider and abettor. We disagree.

■ Count eight of the indictment in this case charged Barbara Aflleje–Torres and Raymond Torres with a substantive count of money laundering and with aiding and abetting the same; it did not charge conspiracy to money launder, a separate and distinct crime from the substantive offense of money laundering. Nonetheless, the government attempts to bootstrap Barbara Aflleje–Torres' involvement in a conspiracy to distribute methamphetamine into some type of vicarious liability for a substantive count of money

---

**6.** Irene Aflleje also testified that Mr. Aflleje would use the proceeds of the wire transfers to buy more methamphetamine that would later be resold, thereby satisfying the "promotion" element of § 1956(a)(1)(A)(i).

laundering. We reject the unprecedented argument that simply because several individuals were involved in a conspiracy to distribute drugs necessarily implies liability for other offenses beyond the scope of the conspiracy itself. While the government's theory might be plausible if the defendants had been charged with conspiracy to money launder, the indictment in this case does not make such an allegation. Therefore, we hold Ms. Aflleje–Torres' conviction cannot be sustained on this ground.

■ Moreover, to the extent the government argues that the testimony of Irene Aflleje shows Barbara Aflleje–Torres would request the wire transfers to support her liability as an aider and abettor, the record belies that contention. During Ms. Aflleje's direct examination, she testified about a wire transfer record from May 16, 1992, labeled exhibit 3–20. This transfer forms the basis for this money laundering count. The sum total of her testimony was as follows:

Q. (BY MR. RINGER) 3–20. Look at 3–20. What do you know about that?

A. I sent $2,000 to *Raymond Torres* on 5–16–92.

Q. Okay. What was that for?

A. The money I had owed *him* for the sale of methamphetamine.

Q. Where did the money come from that you sent?

A. From selling methamphetamine.

(Emphasis added).

Not only does this testimony make no reference to Ms. Aflleje–Torres, it expressly refers only to Mr. Torres. Because there is insufficient evidence that Barabara Aflleje–Torres was involved in laundering money on May 16, 1992, or that she aided and abetted her husband in laundering money, her conviction on this count must be reversed.

### 3. Raymond Torres

■ Mr. Torres argues the evidence was insufficient to support his conviction on count eight for money laundering. He contends the government failed to prove the $2,000 wire transfer he received from Irene Aflleje on May 16, 1992, while he was in Guam, was used to promote an unlawful activity, as re-

quired by § 1956(a)(1)(A)(i). Specifically, he argues the undisputed testimony in the record is that he used this money to purchase a new automobile, and therefore, the transaction underlying the allegation of money laundering—purchasing a car—was not made with the requisite intent under § 1956(a)(1)(A)(i). *Cf. United States v. Johnson,* 971 F.2d 562, 565–66 (10th Cir.1992). We agree.

The government again relies on the testimony of Irene Aflleje. She acknowledged having sent a wire transfer in the amount of $2,000 to Mr. Torres while he was in Guam on May 16, 1992. She testified she did this because she owed Mr. Torres money for drugs he had fronted to her, and she obtained the $2,000 from the sale of methamphetamine. This was the extent of the government's proof regarding Mr. Torres' alleged money laundering. Mr. Torres testified in his own defense that while he was in Guam in May of 1992, he "ran into problems with transportation [so he] bought a vehicle." The following colloquy between Mr. Torres and his attorney then took place.

Q. How did you obtain money to purchase this vehicle?

A. My wife [Barbara Aflleje–Torres] asked Irene to lend us $3,000 to buy a vehicle.

Q. Did you overhear that conversation?

A. Yes, I did.

Q. Was the purpose of that money when she talked to Irene, the express purpose was to buy the vehicle?

A. Yes, it was.

Q. It wasn't to buy drugs or to pay for drugs or anything like that, was it?

A. No, it wasn't.

The cross-examination of Mr. Torres by the government made no reference to this particular wire transfer nor was there any effort to dispute how Mr. Torres used these proceeds.

Even if we assume the testimony of Mr. Torres and Ms. Aflleje–Torres would be sufficient to establish the first two elements of proof under § 1956(a)(1)(A)(i), namely, that Mr. Torres conducted a financial transaction with knowledge that the proceeds used were

derived from an unlawful activity, there is simply no evidence that that transaction— buying a car—was undertaken with an intent to promote further unlawful activity as required by § 1956(a)(1)(A)(i). The only testimony in the record regarding the use of these funds was Mr. Torres' undisputed testimony he used the money to purchase a car while he was in Guam because he was having car trouble.

Arguably, purchasing an automobile might be sufficient to constitute money laundering under § 1956(a)(1)(A)(i) if, for example, the government could prove the car was purchased for use in the drug distribution business (i.e., with the intent of promoting an unlawful activity). *See, e.g., Puig–Infante,* 19 F.3d at 940 (defendant convicted for money laundering under § 1956(a)(1)(A)(i) for having purchased an automobile that was later used to attempt to transport marijuana). But the government simply failed to offer any such evidence of Mr. Torres' unlawful intent in purchasing this vehicle in this case. This deficiency in proof compels the

conclusion this conviction under § 1956(a)(1)(A)(i) must be reversed.[7]

### D. Interstate Travel in Aid of Racketeering

Joseph Aflleje challenges his conviction for interstate travel in aid of racketeering under the Travel Act, 18 U.S.C. § 1952(a)(3).[8] The government's theory was that while Mr. Aflleje was in California, he gave Judy Ford eight ounces of methamphetamine to send by Federal Express back to Irene Aflleje and Joe McLemore in Oklahoma on July 9, 1992. The government further alleged this package was sent with the intent of promoting and maintaining Mr. Aflleje's drug operations. On appeal, Mr. Aflleje argues the only testimony offered by the government was that of Mr. Aflleje's accomplices who testified for the prosecution under a grant of immunity as part of a plea arrangement. In his words, his conviction must be overturned because it "is totally reliant on the uncorroborated testimony of the cooperating witnesses."

---

**7.** In its brief on appeal, the government parrots the language of § 1956(a)(1)(B)(i) and argues Mr. Torres "knew that the transaction was designed to conceal the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity." Even assuming this is true and that Mr. Torres bought this car for the purpose of concealing the proceeds of an unlawful drug activity, as opposed to using the money with the intent to promote an unlawful activity, this argument is misdirected because Mr. Torres was not indicted for violating subsection (B)(i). This argument simply fails to recognize that the elements of proof under § 1956(a)(1) differ depending on which subsection of that statute forms the basis for the charge in the indictment. *See United States v. Heaps,* 39 F.3d 479, 483 (4th Cir.1994) (noting the similarities and distinctions in the elements of proof under subsections (A)(i) and (B)(i)); *see also United States v. Young,* 45 F.3d 1405, 1413 (10th Cir.1995).

As indicated, subsection (A)(i) requires proof the defendant conducted a financial transaction, with proceeds known to be derived from an unlawful activity, "with the intent to promote the carrying on of specified unlawful activity." Subsection (B)(i), however, requires proof that the proceeds of a known unlawful activity were used to conduct a transaction designed in whole or in part "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds," which we have referred to as the "design requirement." *See United States v. Gar-*

*cia–Emanuel,* 14 F.3d 1469, 1473 (10th Cir.1994) (discussing 18 U.S.C. § 1956(a)(1)(B)(i)).

The indictment in this case alleges only a violation of § 1956(a)(1)(A)(i), and does not mention subsection (B)(i). Thus, while the purchase of a car might be sufficient to meet the design requirement of § 1956(a)(1)(B)(i) as a means of concealing the proceeds, *see id.* at 1472–75, the defendant was not indicted for having violated that section of the statute, and it is therefore not relevant to this case. Simply put, the essential elements under these two subsections of § 1956(a)(1) are not, as the government apparently contends, interchangeable. To support Mr. Torres' conviction under § 1956(a)(1)(A)(i), the statute in question in this case, the government was required to prove he used the $2,000 wire transfer, which we can assume was known to him to be the proceeds of an unlawful activity, with the intent to promote an unlawful activity. *See* 18 U.S.C. § 1956(a)(1)(A)(i). The government has failed to carry its burden of proof on this element, and Mr. Torres' conviction is therefore infirm.

**8.** 18 U.S.C. § 1952(a)(3) provides "[w]hoever travels in interstate ... commerce or uses the mail or any facility in interstate ... commerce, with intent to— ... promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity" commits a federal offense.

We recently observed "the assumption that the testimony of an accomplice should seldom, if ever, be believed.... [I]s not the law." *United States v. McGuire*, 27 F.3d 457, 462 (10th Cir.1994). This is true because "[i]t is the right of the jury to determine the credibility of each witness ... and a jury may convict based on the uncorroborated testimony of a co-conspirator," *United States v. Cox*, 934 F.2d 1114, 1120–21 (10th Cir.1991) (internal citation omitted) (citing Tenth Circuit cases), so long as the testimony is not incredible on its face and is otherwise capable of establishing guilt beyond a reasonable doubt. *See United States v. Gordon*, 987 F.2d 902, 906 (2d Cir.1993). We have also stated "a conviction based on accomplice testimony may be affirmed if the district court properly instructed the jury that accomplice testimony must be carefully scrutinized, weighed with great care, and received with caution." *United States v. Chatman*, 994 F.2d 1510, 1514–15 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 230, 126 L.Ed.2d 185 (1993).

Mr. Aflleje does not assert there was an absence of proof of an essential element of this crime.[9] Rather, he argues the evidence on this count was unreliable, as opposed to insufficient, and in so doing, he implicitly concedes there was some evidence to support this conviction; he merely takes issue with the weight that evidence should have been given by the jury. The government offered the testimony of Irene Aflleje, Judy Ford and Joe McLemore, in addition to the Federal Express package itself, as evidence bearing on this count. Judy Ford's testimony was critical, and she testified that she wrapped the drugs she had received from Mr. Aflleje in a plastic bag and then sent it in a Federal Express envelope to Irene Aflleje in Oklahoma, in accordance with Mr. Aflleje's

instructions. Irene Aflleje testified she received a Federal Express package on July 9, 1992, unaware that the package was being delivered pursuant to a controlled delivery as law enforcement officials had already determined the package contained methamphetamine. Joe McLemore also testified he was arrested at the time this controlled delivery took place.

In challenging the "sufficiency" of the evidence on appeal, Mr. Aflleje emphasizes the lack of corroboration, the absence of his fingerprints on the package, and the name "Wiggins,"[10] rather than his name, appeared on the package. But "a challenge to the weight of the evidence is a matter for argument to the jury, not a ground for reversal on appeal." *Gordon*, 987 F.2d at 906; *see also United States v. Pearson*, 798 F.2d 385, 387 (10th Cir.1986) ("it is not the function of this Court to reweigh conflicting evidence or consider the credibility of witnesses") (citation omitted). Furthermore, the district court instructed the jury, in accordance with our admonition in *Chatman*, that the testimony of all of the accomplices "should be examined by you with greater care than the testimony of an ordinary witness." The testimony discussed above, coupled with the district court's cautionary instruction, require affirmance of this conviction.

## E. Use of a Communication Facility

 Barbara Aflleje–Torres challenges her conviction for unlawful use of a communications facility to facilitate the distribution of a controlled substance under 21 U.S.C. § 843(b).[11] This statute "penalizes the knowing and intentional use of a telephone to commit, cause, or facilitate a drug crime." *United States v. Roberts*, 14 F.3d 502, 519 (10th Cir.1993). " 'In order to obtain a conviction under 21 U.S.C. § 843(b), the govern-

---

9. "The elements necessary for a successful prosecution under the Travel Act are: (1) travel or use of facilities in interstate commerce; (2) with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of a prohibited activity ...; and (3) subsequent attempt to commit or actual commission of the proscribed activity." *United States v. Bernaugh*, 969 F.2d 858, 866 (10th Cir. 1992) (citation omitted).

10. The defendants used the fictitious surname of "Wiggins" when packages containing drugs were sent from Mr. Aflleje in California to his contacts back in Oklahoma.

11. 21 U.S.C. § 843(b) provides "[i]t shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony."

ment must prove (1) knowing or intentional (2) use of a communications facility (3) to commit, cause or facilitate the commission of a drug felony.'" *United States v. Willis*, 890 F.2d 1099, 1103 (10th Cir.1989) (quoting *United States v. Johnstone*, 856 F.2d 539, 542–43 (3d Cir.1988)).

Ms. Aflleje–Torres contends the evidence "was not substantial enough" to support the verdict. In support of this allegation, the government offered the testimony of Irene Aflleje, who testified she had a conversation with Ms. Aflleje–Torres over the phone regarding "the balance being owed on the methamphetamine account." This testimony is legally sufficient to support the jury's verdict in light of the broad interpretations we have given to the terms "use" and "facilitate." *See Roberts*, 14 F.3d at 519. Furthermore, the defendant's attempt to argue that the quantum of evidence was not substantial "enough" is another attempt to raise, improperly so, a credibility question on appeal, an argument meriting no further discussion.

## II. Evidentiary Issues

Barbara Aflleje–Torres raises two evidentiary issues on appeal. First, she claims the district court erred in allowing the prosecutor to introduce the testimony of DEA Agent Judy Hoke. Ms. Aflleje–Torres claims Agent Hoke's testimony constituted "impermissible bolstering of the credibility of previous witnesses." Second, Ms. Aflleje–Torres claims the court erred in permitting IRS Agent Larry Morgan to testify that the defendants did not have a legal source of income and that the money underlying the wire transfers in this case were not generated by any legal source of income. Ms. Aflleje–Torres argues his testimony was the functional equivalent of an expert opinion as to the requisite *mens rea*. She asserts this is prohibited by Rule 704(b) of the Federal Rules of Evidence. *See, e.g., United States v. Richard*, 969 F.2d 849, 854–55 (10th Cir. 1992).

Because no objection was raised as to the testimony of either of these witnesses, however, we review only for plain error. *See United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir.1990). To constitute plain error,

the alleged error must be both "obvious and substantial." *United States v. Barber*, 39 F.3d 285, 288 (10th Cir.1994) (citations and internal quotations omitted); *see also United States v. Olano*, —— U.S. ——, ——–——, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993). A review of the record in this case convinces us the admission of the testimony of these two witnesses was not error, and thus, was not plain error.

Agent Hoke testified she interviewed the cooperating witnesses in this case and she reviewed Irene Aflleje's calendar and ledger in great detail. She also testified she subpoenaed wire transfer records and telephone records, in an attempt to correlate those records to the information contained in Irene Aflleje's calendar and ledger. While the line between corroborative testimony and testimony that constitutes impermissible credibility-bolstering may not always be clear, we believe the balance of Agent Hoke's testimony served a legitimate corroborative function. To the extent any of her testimony could even arguably be viewed as impermissible bolstering of the testimony of other witnesses, we find that testimony harmless. *See Bowie*, 892 F.2d at 1499 (harmless error cannot constitute plain error). In addition, we find *United States v. Cruz*, 981 F.2d 659 (2d Cir.1992), which Ms. Aflleje–Torres relies upon, distinguishable. The testimony in that case, unlike Agent Hoke's testimony in this case, was introduced "*solely* to bolster the credibility of the government's fact-witnesses," and not for any legitimate purpose. *Id.* at 664 (emphasis added). Therefore, we find the admission of this testimony did not constitute plain error.

The claim regarding Agent Morgan's testimony is equally unpersuasive. Agent Morgan testified he had reviewed the financial documents of the defendants, including tax forms and wire transfer orders, and concluded from his review of these documents that the defendants' income could not be traced to a legitimate, legal source of income.

By its own terms, Rule 704(b) only prohibits an "expert[ ] from expressly stating the final conclusion or inference as to a defendant's actual mental state." *Richard*, 969

F.2d at 854. This "rule does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state." *Id.* at 854–55. Because Agent Morgan's testimony did not expressly intimate an opinion as to a particular state of mind, Rule 704(b) did not preclude his testimony. *Id.* Far from violating Rule 704(b), this testimony was offered to provide an evidentiary basis to permit the inference that the money underlying the numerous wire transfers in this case involved the proceeds of an illegal activity, which is an essential element of the crime of money laundering. Therefore, we find no error in the admission of this testimony.

### III. Sentencing Calculations

#### A. § 3B1.1(a) Enhancement

▮ Joseph Aflleje challenges the district court's decision to increase his offense level four levels under § 3B1.1(a) [12] of the Sentencing Guidelines because he was "a leader in a criminal organization that involved five or more participants and was otherwise extensive." He contends the evidence presented to the district court was insufficient to support a finding that he was a leader or organizer. We review the district court's factual findings only for clear error, "giv[ing] due deference to the district court's application of the guidelines to the facts." [13] *See United States v. Reed,* 1 F.3d 1105, 1110 (10th Cir.1993) (quoting 18 U.S.C. § 3742(e)). Because the government is seeking to increase the defendant's sentence, it bears the burden of persuading the district court, by a preponderance of the evidence, of the propriety of an increase. *See United States v. Hagedorn,* 38 F.3d 520, 522 (10th Cir.1994) (citations omitted).

▮ To support an enhancement under this Guideline, the sentencing court must find, "first, that defendant is an organizer or leader; and, second, that the criminal activity involved five or more participants or was otherwise extensive." *Roberts,* 14 F.3d at 523; *see also United States v. Reid,* 911 F.2d 1456, 1464 (10th Cir.1990), *cert. denied,* 498 U.S. 1097, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991). We believe the district court committed clear error in finding Mr. Aflleje was a leader.

▮ The Commentary to § 3B1.1 lists various considerations the sentencing court "should" take into account in assessing the defendant's leadership role, including

> "the ... exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity and the degree of control and authority exercised over others."

USSG § 3B1.1, comment. (n. 3), quoted in *United States v. Hanif,* 1 F.3d 998, 1004 (10th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 573, 126 L.Ed.2d 472 (1993). In considering these factors, the sentencing court should remain conscious of the fact that the gravamen of this enhancement is control, organization, and responsibility for the actions of other individuals, *see Reed,* 1 F.3d at 1110–11; *Reid,* 911 F.2d at 1464, because § 3B1.1(a) " 'is an enhancement for organizers or leaders, not for important or essential figures.' " *Roberts,* 14 F.3d at 523 (quoting *United States v. Litchfield,* 959 F.2d 1514, 1523 (10th Cir.1992)).

In this case, the district court stated it believed this adjustment was applicable:

> both on the grounds that it involved five or more participants and that it was otherwise extensive, that Mr. Aflleje was the

---

**12.** Section 3B1.1(a) provides a four level increase in the defendant's offense level is appropriate "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a).

**13.** Although counsel for Mr. Aflleje argues this issue should be reviewed *de novo* because it

involves an interpretation of law, we believe the issue is more appropriately viewed as one challenging the factual basis for the district court's finding, rather than a legal issue over the interpretation of this guideline. Therefore, we apply the clearly erroneous standard of review. *See, e.g., Chavez–Palacios,* 30 F.3d at 1295 n. 5.

manager of the criminal activity, such as described in [§ 3B1.1(a) ]. Over the period of this conspiracy, there was Raymond and Barbara Torres, there was Joe McLemore, there was Irene Aflleje, there was Judy Ford [and Shirley Brown].... There were numerous persons that I'm satisfied your client drug [sic] into this conspiracy and I am going to deny your motion in that regard....

. . . .

I'm just satisfied that he was an organizer, as I described, and that it was otherwise extensive and that he was the engine that made this train run and I'm going to overrule your objection.

The presentence report simply contains the conclusion that "[t]he investigation revealed that the defendant was a leader in a criminal organization that involved five or more participants and was otherwise extensive. Pursuant to § 3B1.1(a), 4 levels are added."

Initially, we observe the commentary to this guideline does not mandate that sentencing courts expressly consider each and every factor listed therein, but rather, it merely encourages it. See USSG § 3B1.1, comment. (n. 4). Nonetheless, while we do not fault the sentencing court for not explicitly considering the concerns listed therein, appellate review of the propriety of applying this serious[14] enhancement is hindered by the absence of a clear picture of the reasoning employed by the sentencing court. In this case, the sentencing court may very well have been correct in concluding Mr. Aflleje was an important figure who was integral to the success of this conspiracy; but this fact does not warrant application of § 3B1.1(a). Because we believe the evidence in the record does not demonstrate how the relationship between Mr. Aflleje and the other participants amounted to something more than a wholesaler/retailer or buyer/seller relationship, we hold the government failed to carry its burden of showing that a § 3B1.1(a) enhancement was proper. See United States v.

Moore, 919 F.2d 1471, 1477–78 (10th Cir. 1990); Reid, 911 F.2d at 1465.

In this case, there was no evidence in the record the other coconspirators worked for Mr. Aflleje, nor was there evidence they received any type of remuneration from him for their efforts. The record does not contain evidence of any of the indicia we have previously recognized as bearing on the presence or absence of control. For example, there was no evidence Mr. Aflleje restricted the people to whom the other coconspirators could sell their drugs to, see United States v. Evans, 985 F.2d 497, 500 (10th Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 2942, 124 L.Ed.2d 690 (1993), or that he controlled the manner or the place of delivery, see United States v. Hernandez, 967 F.2d 456, 458 (10th Cir.1992), or that he set the prices at which the methamphetamine could be sold. There is also no evidence that Mr. Aflleje specifically recruited accomplices or that he claimed right to a larger share of the fruits of the crime. See USSG § 3B1.1, comment. (n. 4). In the absence of some evidence of control, we are compelled to conclude the district court's finding that Mr. Aflleje was a leader or organizer is not supported by the record and is therefore clearly erroneous. While the district court may have properly categorized Mr. Aflleje as the "engine" that made this operation run, that fact bears on his relative importance to the organization, and not on whether he was a leader or organizer who exhibited control over those other individuals. See Roberts, 14 F.3d at 523.

### B. Quantity of Drugs

Barbara Aflleje–Torres and Raymond Torres each challenge the findings of the sentencing court regarding the appropriate amount of drugs attributed to them. In determining the quantity of drugs attributable to particular members of a conspiracy, the sentencing court must focus on each defendant's own relevant conduct: "[w]hen several

---

14. In this case, the court determined Mr. Aflleje's offense level to be 36 and his criminal history category to be level II, resulting in a guideline range of 210–262 months. Without this four level increase, the resulting guideline range would have been 135–168 months. See USSG ch. 5, pt. A. We point out the relative severity of this enhancement only to illustrate that this is indeed a severe enhancement that deserves an appropriate level of scrutiny from sentencing courts to insure it is warranted in a particular case.

defendants are convicted of conspiracy, the relevant conduct for purposes of sentencing is not necessarily the same for every participant." *United States v. Coleman,* 7 F.3d 1500, 1504 (10th Cir.1993) (citations and internal quotations omitted). In essence, then, "[t]he Guidelines require examination of the scope of the defendant's agreement to undertake joint activity and of the reasonable foreseeability of co-conspirators' criminal conduct," *id.,* although "the defendant need not have been indicted or convicted by the jury for quantities for which he is ultimately held responsible." *Reed,* 1 F.3d at 1111 (citations omitted).

■■■■ The government bears the burden of proving, by a preponderance of the evidence, the quantities of drugs attributable to each defendant, *see Bernaugh,* 969 F.2d at 864, and we review the sentencing court's factual findings for clear error. *See United States v. Rios,* 22 F.3d 1024, 1028 (10th Cir. 1994). To constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

The sentencing court adopted the findings in the presentence report, which attributed 1275.75 grams of methamphetamine to Mr. Torres and 1,332.45 grams of methamphetamine to Ms. Aflleje–Torres. To support these calculations, the presentence report relied on Irene Aflleje's ledger and calendar to determine the defendants' relative responsibilities in this conspiracy for a six-month period beginning in January of 1992.[15] On appeal, Mr. Torres and Ms. Aflleje–Torres argue, in essence, that some of the quantities attributed to them should not reasonably be attributed to the other because the evidence did not distinguish among precisely who was involved in each transaction.

■■■■ The defendants are correct that the government cannot carry its burden of attributing quantities of drugs or sentencing purposes merely by proving, without more, that several defendants were coconspirators. *See Evans,* 970 F.2d at 678 (collecting cases.) The touchstone under § 1B1.3 is whether the quantities were reasonably foreseeable to the coconspirators in light of the nature, extent, and purpose of the conspiracy. *Id.* Thus, the argument that the defendants' sentences should be calculated only on the basis of the quantities of drugs each personally and directly handled is simply not correct. *See Williams,* 897 F.2d at 1040; *see also Angulo–Lopez,* 7 F.3d at 1512.

■■■■ In this case, a jury found Mr. Torres and Ms. Aflleje–Torres guilty of conspiring to distribute methamphetamine. Documentary and testimonial evidence established that the sum total of the methamphetamine distributed by these individuals exceeded three kilograms. Based on this evidence, the sentencing court concluded it was proper to attribute 1,275 and 1,332 grams of methamphetamine to Mr. Torres and Ms. Aflleje–Torres, respectively, as quantities reasonably foreseeable to them based on their own activities and those of their coconspirators during the relevant time frame. While we might disagree with the sentencing court's finding, that fact does not permit us to override the district court's finding because it is supported by the record and it is not clearly erroneous.[16]

**15.** While Mr. Torres argues he should not be held responsible for distributions occurring during the month of May 1992 because he was in Guam, this argument fails to recognize that "[a]bsent any affirmative withdrawal, [he] remained part of the ongoing criminal enterprise." *United States v. Williams,* 897 F.2d 1034, 1040 (10th Cir.), *cert. denied,* 500 U.S. 937, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991) (citing Tenth Circuit cases). Therefore, this argument is without merit.

**16.** Finally, to the extent Mr. Torres argues his exposure to the quantities of methamphetamine attributed to him should be limited because he entered this conspiracy in January 1992, after it had been in operation for some time, this argument is without merit. *Cf. United States v. Lockhart,* 37 F.3d 1451, 1454 (10th Cir.1994). The calculations used by the sentencing court only attributed quantities of drugs to Mr. Torres as of January of 1992, when he was a member of this conspiracy and not before that time.

### C. The Type of Methamphetamine

After briefing was completed, Mr. Torres filed a *pro se* document titled "Motion to Enter *Omitted* Evidence on Record Pursuant to Federal Rules of Appellant [sic] Procedure Title 28 Rule 10(c), (e)." We construe this motion as a motion to file a supplemental *pro se* brief which, for reasons stated below, we will not entertain at the present time. In this motion, Mr. Torres asserts his trial counsel was ineffective for failing to object at sentencing to the alleged failure of the government to prove the nature and type of methamphetamine at issue in this case (*i.e.,* D versus L methamphetamine), which could potentially impact his sentence under the guidelines. Because we cannot, on the present state of the record, make a determination as to the merits of this ineffective assistance claim, *see, e.g., Beaulieu v. United States,* 930 F.2d 805, 807 (10th Cir.1991), we deny Mr. Torres' motion to file a supplemental *pro se* brief. Mr. Torres is, of course, free to pursue relief on this claim by way of a motion pursuant to 28 U.S.C. § 2255. *See id.*

### CONCLUSION

With respect to the defendants' convictions, we **AFFIRM** the convictions of Joseph Aflleje on all counts. We **AFFIRM** the convictions of Barbara Aflleje–Torres on counts one, three, four and six, and we **REVERSE** her conviction for money laundering on count eight for insufficient evidence. We **AFFIRM** the convictions of Raymond Torres on counts one and four, and we **REVERSE** his convictions for distribution on count three, and for money laundering on count eight, for insufficient evidence.

With respect to the defendants' sentences, we **AFFIRM** the sentences imposed as to defendants Barbara Aflleje–Torres and Raymond Torres, but we **REMAND** Mr. Aflleje's case to the district court for resentencing in accordance with this opinion.