**UNITED STATES COURT OF APPEALS**
**Filed 8/21/96**
**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

ARMANDO NELSON PELLIERE,

     Defendant-Appellant.

No. 95-3321
(D.C. No. 93-CR-40003-03)
(D. Kan.)

## ORDER AND JUDGMENT[*]

Before **EBEL**, **LOGAN**, and **BRISCOE**, Circuit Judges.

This is an appeal from resentencing in a criminal case in which Defendant-Appellant Armando Nelson Pelliere pled guilty to possession with intent to distribute cocaine hydrochloride. The charges against Pelliere in this case stem from his participation in a large drug conspiracy involving numerous coconspirators who imported cocaine from Panama and distributed it in Junction City, Kansas. Pelliere was charged in two counts of a multi-count indictment

---

[1]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

with conspiracy to possess crack cocaine with intent to distribute in violation of 21 U.S.C. § 846, and with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).  Pursuant to a plea agreement, Pelliere pled guilty to the possession charge, and the government dismissed the conspiracy charge.  In sentencing Pelliere, the district court imposed a three-level enhancement for Pelliere's role in the offense as manager or supervisor of the drug distribution scheme, U.S.S.G. § 3B1.1(b), and a two-level enhancement for obstruction of justice, U.S.S.G. § 3C1.1.  Pelliere appealed his sentence to this court in United States v. Pelliere, 57 F.3d 936 (10th Cir. 1995).  On appeal, this court reversed the obstruction of justice enhancement and remanded the case for specific factual findings regarding Pelliere's role in the offense.  Pelliere, 57 F.3d at 940.  On September 11, 1995, Pelliere was resentenced.  In support of its position, the government presented the same evidence previously presented, as well as additional testimony.  After reviewing all of the evidence presented, the district court found Pelliere to be a supervisor or manager under U.S.S.G. § 3B1.1(b) and enhanced Pelliere's Guideline level by three points.  Pelliere was sentenced to 95 months imprisonment and four years supervised release.  Pelliere once again appeals the findings of the district court.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and **AFFIRM**.

I.

United States Sentencing Guideline 3B1.1(b) provides a three level enhancement for those offenders who are determined to be a "manager or supervisor (but not an organizer or leader) [of a] criminal activity [that] involve[s] five or more participants or was otherwise extensive . . . ." Under Application Note 1 to this guideline, a "participant" is defined as someone who is criminally responsible for the commission of the offense, but need not have been convicted of that offense. A manager or supervisor must have decision-making authority or control over a subordinate. United States v. Roberts, 14 F.3d 502, 524 (10th Cir. 1993). "[I]n order for a defendant to receive an adjustment under § 3B1.1(b) for his role as a manger or supervisor, the defendant must have managed or supervised at least one other participant." United States v. Johnson, 4 F.3d 904, 917 (10th Cir. 1993) (citation and internal quotation marks omitted), cert. denied, 510 U.S. 1123 (1994).

The government has the burden of proving by a preponderance of the evidence any sentence enhancement it asserts the court should impose. See United States v. Torres, 53 F.3d 1129, 1142 (10th Cir.), cert. denied, 115 S. Ct. 2599 (1995). The district court in this case concluded that the government had met its burden under § 3B1.1(b) and therefore enhanced Pelliere's sentence. The district court's findings of fact as to aggravating role are reviewed for clear error;

the application of those facts to the guidelines is reviewed <u>de novo</u>. <u>Pelliere</u>, 57 F.3d at 940.

II.

"In enhancing a defendant's sentence based on his role in the offense, a district court must make specific factual findings as to that role." <u>Roberts</u>, 14 F.3d at 522 (citation and internal quotation marks omitted). On Pelliere's first appeal to this court, this court concluded that the district court had made inadequate factual findings to support its determination that Pelliere was a manager or supervisor under § 3B1.1(b). <u>Pelliere</u>, 57 F.3d at 940 ("Although the court . . . concluded that an enhancement was proper, it articulated no specific findings to support its decision. Here . . . appellate review of the propriety of applying this serious enhancement is hindered by the absence of a clear picture of the reasoning employed by the sentencing court.") (citation and internal quotation marks omitted). The court further stated that "[s]pecific fact findings are particularly vital in this case" because some of the evidence relied upon by the government was hearsay. <u>Id.</u> While the court acknowledged that "the district court may use <u>reliable</u> hearsay testimony in determining an appropriate sentence," <u>id.</u> (emphasis added), this court concluded that the district court erred because it "did not specify what particular hearsay statements it was relying upon, nor did it make any assessment of reliability," <u>id.</u>

On this appeal, Pelliere argues that the district court erred at resentencing in enhancing his sentence because the factual findings of the district court were not supported by the evidence. We disagree. The evidence presented to the district court can be summarized as follows.[1] First, Lisa Ponder indicated in her grand jury testimony that she was the girlfriend of Armando Pelliere, the defendant, during the period of June 1992, and that on June 17, 1992, Pelliere and Marcos Torres came to her apartment to ask her to make a trip to New York to pick up "their stuff" (cocaine). R.O.A., Vol. V at 10-11. Ponder stated that the money provided for her trip to New York belonged to "Porsche" (Torres) and "Armando" (Pelliere). Id. at 12-14. Ponder further testified that after the arrangements had been made for her trip to New York, she put on a girdle and Pelliere packed it with $21,000.00 in cash. Id. at 18-19. Finally, Ponder testified that she was advised by her previous boyfriend, Charles Arevalo, who obtained cocaine from Torres, that while Torres was in Panama, Pelliere and another individual were "taking his business, were running his business." Id. at 62. She stated that Torres was out of the country for approximately three to four months during the fall of 1991. Id.

---

[1] That the following evidence was considered by the district court in enhancing Pelliere's sentence under § 3B1.1 is clear from the district court's memorandum and order dated September 15, 1995, which constitutes the court's findings regarding the enhancement. R.O.A., Vol. I, doc. 416.

Second, on September 23, 1992, Anthony Felix testified under oath before a federal grand jury in Topeka, Kansas. While most of Felix's testimony related to Torres, he did indicate that while Torres was in Panama during the Fall of 1991 his roommate, Roland Mitchell, was receiving cocaine from Pelliere and that "Armando was more or less running the operation while Porsche (Torres) was in Panama." R.O.A., Vol. IV at 10. Third, Darryl Jackson also testified under oath on September 23, 1992, before the grand jury investigating this case. He testified that at one point he used to sell small amounts of cocaine for Torres. R.O.A., Vol. VI at 4-6. He indicated that shortly after Torres left the country in approximately August of 1991, he was visited by Pelliere and Nagro (Alcides Plato) who delivered cocaine for resale. Id. at 16-17. Jackson described Plato as Pelliere's "flunky." Id. Jackson stated that after this visit, he continued to deal with Pelliere, and indicated that after Torres returned from Panama he "stuck" with Pelliere. Id. at 18.

Jackson also testified at Pelliere's resentencing in September of 1995. At that hearing Jackson indicated that during a meeting between himself, Torres, Plato and Pelliere, he was advised that in Torres' absence he was to obtain cocaine from Plato and Pelliere. R.O.A., Vol. VII at 10-11. Jackson testified that during the approximately six month period that Torres was out of the country he obtained his cocaine through Plato and Pelliere. Id. Jackson testified that he

believed Pelliere controlled the source of cocaine. Id. at 13. He also stated that it was his impression, based on his experience, that Pelliere was running the Torres cocaine operation while Torres was in Panama, and that neither he nor Plato could obtain cocaine without first contacting Pelliere. Id. at 14.

Finally, United States Customs Agent Jim Kanatzar, the agent assigned to investigate the case, testified before the court at the sentencing hearing held on February 16, 1994. Agent Kanatzar indicated that all of the information provided by witnesses Lisa Ponder, Anthony Felix and Daryl Jackson was corroborated by other facts collected in the investigation. R.O.A., Vol. III at 24-26. He also testified generally about Pelliere's position in the drug distribution process while Torres was in Panama, indicating that Pelliere was responsible for picking up the cocaine orders from Plato and returning the cocaine to Plato for distribution. Id. at 20-25.

Based on this evidence the district court found Pelliere to be a manager or supervisor pursuant to § 3B1.1. The court found that "the government had introduced reliable evidence demonstrating by a preponderance of the evidence that Pelliere was a manager or supervisor in the criminal conspiracy to distribute cocaine." R.O.A., Vol. I, doc. 416 at 4. We agree. Jackson, Ponder and Felix all testified to Torres' absence from the United States during the fall of 1991. They all indicated that the drug trafficking business was continued, at least in part,

under the supervision of Pelliere. These were witnesses who had firsthand knowledge of the Torres organization and, for the most part, were involved in it.[2] With respect to Jackson specifically, not only did he testify under oath during the grand jury investigation, he also testified during Pelliere's resentencing hearing. Thus, the district court had the opportunity to make a personal, first-hand assessment of Jackson's credibility. Each of the witnesses testified independently to facts sufficient to sustain an enhancement under § 3B1.1. The district court's determination that the witnesses were credible and that the evidence demonstrates that Pelliere was a manager or supervisor of a criminal enterprise that involved

---

[2] Pelliere concedes that Ponder made a trip to New York in order to purchase cocaine, and that he assisted Torres when Ponder made the trip. Br. of Appellant at 9 ("That Lisa Ponder undertook a trip to New York to purchase cocaine for Marcos Torres' operation is not in issue, nor is it in issue that defendant Pelliere assisted Torres when Lisa made the trip.").

five or more participants was not clearly erroneous.[3]  We therefore **AFFIRM**

Pelliere's sentence.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

---

[3]        There is no dispute that this enterprise involved five or more participants.  The only issue on appeal is whether Pelliere was a supervisor or manager within the enterprise.  We do note, however, that based upon the discussion above and our review of the record, it is clear that the enterprise included at least the following six individuals:  Marcos Torres, Alcides Plato, Anthony Felix, Daryl Jackson, Lisa Ponder, and Pelliere himself.  See United States v. Cordoba, 71 F.3d 1543, 1547 (10th Cir. 1995) (the defendant is included among the participants for the purposes of section 3B1.1).