**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 24, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

PAUL RUBIO-SEPULVEDA, a/k/a
Pelon,

      Defendant - Appellant.

No. 18-1055
(D.C. No. 1:14-CR-00144-CMA-5)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **McKAY**, and **KELLY**, Circuit Judges.

---

Defendant-appellant Paul Rubio-Sepulveda appeals from the sentence he

received after pleading guilty to two counts relating to his role in a drug and

money-laundering conspiracy. He argues that the district court procedurally

erred in applying a four-level "organizer or leader" enhancement pursuant to

§ 3B1.1(a) of the United States Sentencing Guidelines ("U.S.S.G." or

"Guidelines"), that his sentence was substantively unreasonable, and that the

---

[*]     This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be
cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

district court erred in proceeding with his sentencing hearing even though his counsel had stated that she was not ready.  For the reasons explained below, we conclude that the district court clearly erred in applying the § 3B1.1(a) enhancement in computing Mr. Rubio-Sepulveda's sentence.  On this basis, exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we **reverse** and **remand** for resentencing.

## I

In September 2017, Mr. Rubio-Sepulveda pleaded guilty to two counts relating to his involvement in a drug and money-laundering conspiracy.[1]  Prior to sentencing, he objected to the recommendation of the presentence report ("PSR")[2] that he should receive a four-level sentencing enhancement under U.S.S.G. § 3B1.1(a) for being an "organizer or leader" of a criminal activity involving five or more participants.  Instead, Mr. Rubio-Sepulveda argued, he

---

[1]     The first charged offense was conspiracy to distribute and possess with intent to distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin, and 500 grams or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), (b)(1)(B)(ii)(IV), and 18 U.S.C. § 2; the second charged offense was money laundering to conceal illegal proceeds, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

[2]     The U.S. Probation Office used the 2016 edition of the Guidelines in calculating Mr. Rubio-Sepulveda's sentence.  Because he does not challenge this decision, we also rely on this edition of the Guidelines in our analysis.

had merely been a "manager or supervisor" of the conspiracy and, thus, should only receive a three-level enhancement under U.S.S.G. § 3B1.1(b).

The district court disagreed. Specifically, at the sentencing hearing, the court noted that Mr. Rubio-Sepulveda had worked as a "dispatcher" for the conspiracy, with intercepted communications showing that he had "serv[ed] approximately 25 street-level distributors a day with heroin at a half ounce, an ounce, or multiple-ounce levels." R., Vol. IX, at 299 (Tr. of Sentencing Hr'g, dated Feb. 5–6, 2018). The court also cited evidence revealing that Mr. Rubio-Sepulveda was "coordinating runners and street-level dealers, who met the runners to obtain narcotic inventory." *Id.* Mr. Rubio-Sepulveda, the court continued, sometimes "set[] terms of payment and prices" to street-level dealers. *Id.* Finally, the court noted that the evidence showed that Mr. Rubio-Sepulveda was "actively involved in laundering the money from the [conspiracy's] drug sales." *Id.* at 300. These facts, the court concluded, were sufficient to establish that Mr. Rubio-Sepulveda qualified for the four-level "organizer or leader" enhancement under § 3B1.1(a).

Including the § 3B1.1(a) enhancement, Mr. Rubio-Sepulveda's total offense level was thirty-six, contributing to a Guidelines sentencing range of 188 to 235 months' imprisonment. After receiving a sentence at the top of that range, Mr. Rubio-Sepulveda timely appealed. On appeal, he argues that the

3

district court procedurally erred in applying the § 3B1.1(a) "organizer or leader" enhancement to his sentence, specifically contending that his role as a coordinator and dispatcher for the conspiracy warranted only a three-level "manager or supervisor" enhancement under § 3B1.1(b).  Mr. Rubio-Sepulveda further argues that his sentence was substantively unreasonable and that the district court erred by proceeding with his sentencing hearing even though his counsel had stated that she was not ready for that hearing.

## II

We agree with Mr. Rubio-Sepulveda that the district court clearly erred in applying the § 3B1.1(a) enhancement in calculating his sentence, and we reverse and remand on this basis.  Accordingly, we need not and do not opine on Mr. Rubio-Sepulveda's other sentencing-based appellate challenges.

## A

A district court's conclusion that a defendant qualifies for an enhancement under U.S.S.G. § 3B1.1(a) is a factual determination that we review for clear error.  *See United States v. Cruz Camacho*, 137 F.3d 1220, 1223–24 (10th Cir. 1998).  "Factual findings are clearly erroneous only if they are without factual support in the record or if this court, considering all the evidence, is left with a definite and firm conviction that a mistake has been made."  *United States v. Lozano*, 921 F.3d 942, 946 (10th Cir. 2019).

4

The government bears the burden at sentencing to establish the evidentiary basis for a § 3B1.1(a) enhancement by a preponderance of the evidence. *See, e.g.*, *United States v. Sallis*, 533 F.3d 1218, 1224 (10th Cir. 2008); *United States v. Torres*, 53 F.3d 1129, 1142 (10th Cir. 1995).

**B**

U.S.S.G. § 3B1.1 provides for a sentencing enhancement where the defendant had an "[a]ggravating [r]ole" in the offense. U.S.S.G. § 3B1.1; *see, e.g.*, *United States v. Gallant*, 537 F.3d 1202, 1240 (10th Cir. 2008). In particular, and as is relevant here, § 3B1.1(a) calls for a four-level enhancement "[i]f the defendant was an *organizer or leader* of a criminal activity that involved five or more participants[3] or was otherwise extensive," whereas § 3B1.1(b) calls for a three-level enhancement "[i]f the defendant was a *manager or supervisor* (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive."[4] U.S.S.G. § 3B1.1 (emphases added) (footnote added).

To help distinguish "a leadership and organizational role from one of mere management or supervision," Application Note 4 to § 3B1.1 explains that:

---

[3]     The parties do not dispute that the conspiracy Mr. Rubio-Sepulveda participated in involved five or more participants.

[4]     U.S.S.G. § 3B1.1(c) calls for a two-level enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in [§ 3B1.1](a) or (b)."

5

> [T]itles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4. Our caselaw elaborates that, "[i]n considering these factors [listed in Application Note 4 to § 3B1.1], the sentencing court should remain conscious of the fact that the gravamen of [the § 3B1.1(a)] enhancement is *control, organization, and responsibility for the actions of other individuals*." *Sallis*, 533 F.3d at 1223 (first alteration in original) (emphasis added) (quoting *Torres*, 53 F.3d at 1142); *see Cruz Camacho*, 137 F.3d at 1224 (stating that a § 3B1.1(a) enhancement requires proof "that Defendant exercised *leadership control* over at least one person" (emphasis added)); *cf. Torres*, 53 F.3d at 1143 ("In the absence of some evidence of control, we are compelled to conclude the district court's finding that [the defendant] was a leader or organizer is not supported by the record and is therefore clearly erroneous.").

Furthermore, we have identified various "indicia . . . as bearing on the presence or absence" of the level of leadership and control required for a § 3B1.1(a) enhancement. *Torres*, 53 F.3d at 1143. These indicia, as we have stated before in cases involving drug conspiracies, include that "other sellers worked for [the defendant], were recruited by him, or had their activities

6

controlled by him; '[the defendant] paid others for their efforts on behalf of the conspiracy'; '[the defendant] restricted the people to whom other coconspirators could sell their drugs'; and '[the defendant] controlled the manner of sales, set prices, or claimed the right to a larger share of proceeds.'" *Sallis*, 533 F.3d at 1223 (quoting *United States v. Anderson*, 189 F.3d 1201, 1212 (10th Cir. 1999)); *see also United States v. Owens*, 70 F.3d 1118, 1129 (10th Cir. 1995) (discussing these "recognized indicia of leadership and control" relevant to a § 3B1.1(a) determination).

We have also made clear that a defendant's "role as a supplier of drugs to others, standing alone, is not enough" to establish the basis for a § 3B1.1(a) enhancement. *Anderson*, 189 F.3d at 1212; *see Owens*, 70 F.3d at 1129. And, more generally, we have stressed that a defendant's "relative importance to the organization" is distinct from "whether he was a leader or organizer who exhibited control over . . . other individuals," as required for a § 3B1.1(a) enhancement. *Torres*, 53 F.3d at 1143; *see id.* (stating that the fact that a defendant was the "'engine' that made [the] operation run" did not bear on whether he was a § 3B1.1(a) "organizer or leader"); *Sallis*, 533 F.3d at 1223 ("[Section] 3B1.1(a) is an enhancement for organizers or leaders, not for important or essential figures." (quoting *Torres*, 53 F.3d at 1142)).

7

## C

We conclude that the district court clearly erred in applying the § 3B1.1(a) enhancement in calculating Mr. Rubio-Sepulveda's sentence. Specifically, though Mr. Rubio-Sepulveda had *some* control or authority over others in the conspiracy, the government cites no record evidence, nor have we independently found any, that would support a finding that the indicia of a § 3B1.1(a) "organizer or leader" are present or that Mr. Rubio-Sepulveda otherwise had a heightened degree of "control, organization, and responsibility for the actions of other individuals"—such that we could permissibly conclude that the district court did not clearly err here in applying § 3B1.1(a)'s enhancement. *Sallis*, 533 F.3d at 1223 (quoting *Torres*, 53 F.3d at 1142).

## 1

As the district court noted, and as the government points out on appeal, Mr. Rubio-Sepulveda had *some* control or authority over others in the conspiracy. For instance, as a "coordinator [or] dispatcher," he operated a "source phone" through which he received drug delivery requests from various dealers in the conspiracy and either fulfilled those requests himself or else "dispatched" someone to make those deliveries at meetings he scheduled. R., Vol. VII, at 91–92 (Tr. of Mots. Hr'g, dated Jan. 5, 2017); *id.* at 304–05 (Tr. of Mots. Hr'g – Vol. 1, dated Feb. 21, 2017). Additionally, another member of the

conspiracy, Jackie Mendoza, once granted Mr. Rubio-Sepulveda's request[5] to create fictitious employment letters for co-conspirators so that they could rent apartments. *See id.* at 600–02 (Tr. of Mots. Hr'g – Vol. 2, dated Mar. 9, 2017).

But the mere fact that Mr. Rubio-Sepulveda had *some* authority to coordinate or control others is not enough to qualify him as a § 3B1.1(a) "organizer or leader." After all, we have stated that a § 3B1.1(b) "manager or supervisor"—who is, by definition, *not* a § 3B1.1(a) "organizer or leader"—must have "decision-making authority or control over a subordinate." *United States v. Roberts*, 14 F.3d 502, 524 (10th Cir. 1993) (emphasis omitted); *see also United States v. Pena-Hermosillo*, 522 F.3d 1108, 1119 (10th Cir. 2008) (explaining that a "supervisor" under § 3B1.1(b) "is one who exercised some degree of control over others involved in the commission of the offense or . . . [was] responsible for organizing others for the purpose of carrying out the crime" (quoting *United States v. Allemand*, 34 F.3d 923, 931 (10th Cir. 1994))). In other words, what distinguishes a § 3B1.1(a) "organizer or leader" from a § 3B1.1(b) "manager or supervisor" is not the mere *existence* of "control and authority exercised over others" but rather "*the degree*" of that control and authority. U.S.S.G.

---

[5]     The government asserts that Mr. Rubio-Sepulveda "directed" Ms. Mendoza to create the fictitious letters. Aplee.'s Resp. Br. at 27. However, technically, and insofar as it matters, the record suggests it was a "request" rather than a directive. R., Vol. VII, at 601–02 (Tr. of Mots. Hr'g – Vol. 2, dated Mar. 9, 2017).

§ 3B1.1 cmt. n.4 (emphasis added).  And the "organizer or leader" must possess more of such control and authority than would be required to qualify as a "manager or supervisor."

Thus, to determine whether Mr. Rubio-Sepulveda qualifies as an "organizer or leader," we must look beyond whether he simply had *some* control or authority over others in the conspiracy and instead examine whether there is evidence of those "indicia . . . bearing on the presence" of the heightened level of leadership and control required for a § 3B1.1(a) enhancement, *Torres*, 53 F.3d at 1143; *cf. Anderson*, 189 F.3d at 1212 (holding that a lack of evidence of these indicia rendered § 3B1.1(a) enhancement clearly erroneous); *Owens*, 70 F.3d at 1129 (same); *Torres*, 53 F.3d at 1143 (same), or, relatedly but more broadly, whether there is evidence that otherwise demonstrates that Mr. Rubio-Sepulveda had a *heightened* degree of "control, organization, and responsibility for the actions of other individuals."  *Sallis*, 533 F.3d at 1223 (quoting *Torres*, 53 F.3d at 1142).  We now consider these questions.

**2**

Turning to the record, we find no evidence that Mr. Rubio-Sepulveda qualifies as a § 3B1.1(a) "organizer or leader" under our recognized indicia. That is—consistent with Mr. Rubio-Sepulveda's argument on appeal—the record contains no evidence that "other sellers worked for [Mr. Rubio-Sepulveda], were

10

recruited by him, or had their activities controlled by him," that Mr. Rubio-Sepulveda "paid others for their efforts on behalf of the conspiracy," that Mr. Rubio-Sepulveda "restricted the people to whom other coconspirators could sell their drugs," or that Mr. Rubio-Sepulveda "controlled the manner of sales, set prices, or claimed the right to a larger share of proceeds." *Sallis*, 533 F.3d at 1223 (quoting *Anderson*, 189 F.3d at 1212).

The government nearly concedes that the record does not support many of these indicia. *See, e.g.*, Aplee.'s Resp. Br. at 30 ("assuming," without offering any substantial argument in the alternative, that "Rubio-Sepulveda is correct . . . that he did not restrict the people to whom the other co-conspirators could sell their drugs, specifically recruit accomplices, nor claim a right to a larger share of the fruits of the crime"). And though the government—tracking the reasoning that the district court offered—makes various assertions that the record *does* support some of the remaining indicia, we find these assertions unpersuasive.

First, the government asserts that there is "abundant evidence that [co-conspirators] worked for Rubio-Sepulveda." Aplee.'s Resp. Br. at 30. It cites, for example, portions of the transcript of a March 2017 hearing that concern the relationship between Mr. Rubio-Sepulveda and one of the conspiracy's dealers, Orlin Cerrato. Those portions of the transcript state that Mr. Rubio-Sepulveda supplied Mr. Cerrato with heroin and cocaine "just about every day during the

11

week" over a certain period, R., Vol. VII, at 411, and that Mr. Cerrato once requested drugs from Mr. Rubio-Sepulveda by telling him that he (Mr. Cerrato) had "a bunch of guys lined up" that were requesting drugs, *id.* at 662. *See also id.* at 409–10 (similarly stating that Mr. Rubio-Sepulveda was "a supplier of heroin and cocaine" to Mr. Yonger Matute-Venegas, a co-conspirator); 660 (finding that a co-conspirator, Mr. Jose Nemecia-Garcia, "request[ed] and receive[d] numerous drug deliveries from Mr. Rubio-Sepulveda").

These statements, however, only suggest that Mr. Rubio-Sepulveda delivered drugs on demand to Mr. Cerrato, as well as other co-conspirators; they do not suggest that these individuals *worked for* Mr. Rubio-Sepulveda. Moreover, other portions of the record strongly suggest that Mr. Rubio-Sepulveda simply worked as a supplier to—but not a boss for—Mr. Cerrato and others in the conspiracy. *See, e.g.*, *id.*, Vol. II, at 405 (Gov't Reply to Def. Rubio-Sepulveda's Objs. to PSR, Attachment 6, filed Jan. 23, 2018) (summarizing phone conversation where Mr. Cerrato told Mr. Rubio-Sepulveda to "come by" for a delivery); *id.* at 420 (similar); *id.*, Vol. VII, at 304–05 ("[Mr. Rubio-Sepulveda] was the guy that was answering what we labeled as the source phone at that point in time. Also, he was the guy who was going and delivering amounts of whatever drugs were being asked for to different people that called that phone."). And, as we previously have made clear, a defendant's "role as a

12

supplier of drugs to others, standing alone, is not enough to establish his role as a leader or organizer." *Anderson*, 189 F.3d at 1212.[6]

Second, and consistent with statements made by the district court at sentencing, the government asserts that there is evidence showing that Mr. Rubio-Sepulveda "individually set drug quantities, prices and payment for the drugs he distributed to lower-level dealers." Aplee.'s Resp. Br. at 26. But the evidence the government points to cannot withstand scrutiny. Specifically, the government cites a portion of Mr. Rubio-Sepulveda's declaration in support of his guilty plea which states that "Mr. Rubio-Sepulveda directly *communicated* with [dealers in the conspiracy] as to drug quantities, prices, and payment." R., Vol. II, at 290 (Def.'s Decl. in Support of Guilty Plea, filed Sept. 13, 2017) (emphasis added). But, as Mr. Rubio-Sepulveda argues persuasively, "any

---

[6] Because the record does not support that co-conspirators *worked for* Mr. Rubio-Sepulveda, the government's reference to *United States v. Chandler*, 5 F. App'x 839 (10th Cir. 2001) (unpublished), is inapposite. In *Chandler*, a panel of this court determined that the defendant qualified for a § 3B1.1(a) enhancement in part because he "had others selling crack *for him*," which allowed the panel to "presume that [the defendant] . . . possibly define[d] territories [for those workers] and set selling prices and commissions." 5 F. App'x at 851 (emphasis added). But we can make no such presumption here: unlike in *Chandler*—where there was evidence that potentially "fifteen people work[ed] for [the defendant] in his drug operation," *id.* at 844—there is no support in the record for a finding that Mr. Rubio-Sepulveda served as anything other than a supplier for those he delivered drugs to.

13

evidence that [he] '*communicated* . . . as to drug quantities, prices and payment' does not mean he is the one that *set* those prices and quantities as opposed to relaying them." Aplt.'s Reply Br. at 9 (emphases added) (quoting Aplee.'s Resp. Br. at 27); *see, e.g.*, *Communicate*, THE NEW OXFORD AMERICAN DICTIONARY 344 (2d ed. 2005) ("[To] impart or pass on (information, news, or ideas).").

In an attempt to further support the notion that Mr. Rubio-Sepulveda set the selling quantities for lower-level dealers, the government again notes that Mr. Cerrato once requested drugs from Mr. Rubio-Sepulveda because Mr. Cerrato had "a bunch of guys lined up" that wanted drugs. R., Vol. VII, at 661–62. However, this language only suggests that Mr. Cerrato had high demand for drugs and was thus asking for a delivery of drugs from Mr. Rubio-Sepulveda; it does *not* suggest that Mr. Rubio-Sepulveda decided the amount that Mr. Cerrato could sell.[7] Relatedly, while the government contends that Mr. Rubio-

---

[7] The government, in its effort to show that Mr. Rubio-Sepulveda set the selling quantities for lower-level dealers, additionally cites a portion of the March 2017 hearing that discusses how two co-conspirators that received drug deliveries from Mr. Rubio-Sepulveda once complained to him that they did not like the "cut" of the "work." R., Vol. VII, at 660. Although a law enforcement agent testified at an earlier hearing that "work" is "very common slang" related to the "cutting of the product" (i.e., the narcotics), *id.* at 213, the government does not explain, nor can we ourselves discern, how this fact supports a finding that Mr. Rubio-Sepulveda regulated the drug quantities that others in the conspiracy could sell. For example, insofar as Mr. Rubio-Sepulveda was engaged in cutting the narcotics, the government does not show that he was in

(continued...)

14

Sepulveda "determined the amounts of drugs [street dealers] would receive," Aplee.'s Resp. Br. at 29, we find no indication in the record that Mr. Rubio-Sepulveda had the authority to reject drug requests from Mr. Cerrato or any other dealer in the conspiracy.

In sum, we determine that—notwithstanding the government's various assertions—our stated indicia of a § 3B1.1(a) "organizer or leader" are not found in the record. In particular, while the evidence that the district court referenced at sentencing and the government points to on appeal perhaps superficially suggests the existence of such indicia, a closer examination of that evidence strongly suggests otherwise.

**3**

More generally, we underscore here that there is no evidence in the record that otherwise would meaningfully support a finding that Mr. Rubio-Sepulveda had the sort of elevated "control, organization, and responsibility for the actions of other individuals" required for a § 3B1.1(a) enhancement. *Sallis*, 533 F.3d at 1223 (quoting *Torres*, 53 F.3d at 1142).

The record suggests that Mr. Rubio-Sepulveda regularly delivered drugs to co-conspirators and often dispatched runners to meet with street-level dealers at

_____

[7](...continued)
charge of determining the extent to which the drugs would be cut or diluted.

15

meetings he scheduled.  *See, e.g.*, R., Vol. VII, at 91–92; *id.* at 304–05.  But the evidence is thoroughly consistent with an arrangement where Mr. Rubio-Sepulveda, rather than possessing significant independent decision-making authority, was assigned to make those deliveries and schedule those meetings and was simply constrained to follow orders.  The existence of such an arrangement would help account, for instance, for the fact that—as the district court mentioned at sentencing—the record does not support a finding that Mr. Rubio-Sepulveda had "free access" to the conspiracy's drug "stash house."  R., Vol. IX, at 297–98.  Such an arrangement would also explain why—as the government conceded at oral argument—the record offers nary the slightest hint that Mr. Rubio-Sepulveda had *any* disciplinary authority over *any* co-conspirators, which would include runners that failed to follow instructions communicated by Mr. Rubio-Sepulveda.  *See* Oral Arg. at 24:15–25:11.

The record does make evident—as the district court noted and as the government highlights on appeal—that Mr. Rubio-Sepulveda was "actively," or even heavily, "involved" in the conspiracy's money laundering operations.  R., Vol. IX, at 300; *see* Aplee.'s Resp. Br. at 28 ("Documents presented to the district court depicted 159 wire transfers connected to Rubio-Sepulveda . . . .").  But this fact says next to nothing about the extent, if any, to which Mr. Rubio-

16

Sepulveda designed those operations, for example, or wielded control over co-conspirators involved in money laundering.

Thus, though the record unassailably establishes that Mr. Rubio-Sepulveda was an important figure in the conspiracy, it establishes, as relevant for our purposes, little more than that. And being an important—or even an indispensable—figure is not enough to support a § 3B1.1(a) enhancement. *See, e.g.*, *Sallis*, 533 F.3d at 1223 ("[Section] 3B1.1(a) is an enhancement for organizers or leaders, not for important or essential figures." (quoting *Torres*, 53 F.3d at 1142)). That is, without evidence that can establish that Mr. Rubio-Sepulveda had a heightened degree of "control, organization, and responsibility for the actions of other individuals," *id.* (quoting *Torres*, 53 F.3d at 1142)—evidence which we do not detect in the record—Mr. Rubio-Sepulveda's various roles in the conspiracy "bear[] [only] on his relative importance to the organization, and not on whether he was a leader or organizer." *Torres*, 53 F.3d at 1143.

\* \* \*

Though Mr. Rubio-Sepulveda had *some* control or authority over others in the conspiracy, and though he played an important role in the conspiracy, we discern no evidence in the record of our recognized indicia of a § 3B1.1(a) "organizer or leader" or evidence that otherwise can establish that Mr. Rubio-

17

Sepulveda possessed the sort of elevated "control, organization, and responsibility for the actions of other individuals" that is the "gravamen" of a § 3B1.1(a) enhancement. *Sallis*, 533 F.3d at 1223 (quoting *Torres*, 53 F.3d at 1142). Put another way, we do not discern evidence in the record that would distinguish Mr. Rubio-Sepulveda from a "manager or supervisor" under § 3B1.1(b) and qualify him for the "organizer or leader" enhancement. The district court therefore clearly erred in applying the § 3B1.1(a) enhancement in calculating Mr. Rubio-Sepulveda's sentence. And because the government offers no argument that this error was harmless, we are bound to reverse. *See, e.g.*, *United States v. Lente*, 647 F.3d 1021, 1037–38 (10th Cir. 2011) ("Harmlessness must be proven by a preponderance of the evidence, and the burden of making this showing falls on the beneficiary of the error—in this case, the government." (quoting *United States v. Cerno*, 529 F.3d 926, 939 (10th Cir. 2008))).

## III

For the foregoing reasons we **REVERSE** the district court's judgment and **REMAND** for resentencing consistent with this order and judgment.[8]

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

---

[8] Because we reverse and remand for resentencing on the basis that the district court clearly erred in applying the § 3B1.1(a) enhancement in calculating Mr. Rubio-Sepulveda's sentence, we do not consider Mr. Rubio-Sepulveda's additional appellate arguments, which also attack the propriety of his sentence, i.e., that his sentence was substantively unreasonable and that the district court erred by proceeding with his sentencing hearing even though his counsel had stated that she was not prepared for the hearing.

No. 18-1055, United States v. Rubio-Sepulveda

**KELLY**, Circuit Judge, dissenting.

The court concludes that the district court clearly erred in applying the U.S.S.G. § 3B1.1(a) enhancement for being an organizer or leader in a drug conspiracy. Because the record plausibly supports the district court's finding to the contrary, I respectfully dissent.

This case calls into focus the distinction between organizers or leaders and managers or supervisors. Sentencing courts must engage in this line-drawing to determine whether a defendant's "control, organization, and responsibility for the actions of other individuals" was of such a degree to merit a four-level enhancement under U.S.S.G. § 3B1.1(a). United States v. Sallis, 533 F.3d 1218, 1223 (10th Cir. 2018) (quoting United States v. Torres, 53 F.3d 1129, 1142 (10th Cir. 1995)). In doing so, they are guided by a mosaic of factors and "indicia" of leadership. See U.S.S.G. § 3B1.1 cmt. n.4; Torres, 53 F.3d at 1143. Their ultimate determination is one of fact, and one we review for clear error. Torres, 53 F.3d at 1142. Only if the sentencing court's finding is wholly implausible in light of the entire record should we reject it. United States v. Halliday, 665 F.3d 1219, 1223 (10th Cir. 2011). Though we might have weighed the evidence differently had we been sitting as triers of fact, when there are two permissible views of the evidence, the trier of fact's selection of one or the other cannot be clearly erroneous. Anderson v. City of Bessemer City, 470 U.S. 564, 573–74 (1985).

The court concludes the record is entirely devoid of indicia of leadership as required by § 3B1.1(a) for the enhancement. It notes there is no evidence that "other

sellers worked for [Mr. Rubio-Sepulveda], were recruited" or "controlled by him," that he "paid others . . . on behalf of the conspiracy" or "restricted the people to whom other coconspirators could sell their drugs," or that he "controlled the manner of sales, set prices, or claimed the right to a larger share of the proceeds." Sallis, 533 F.3d at 1223 (quoting United States v. Anderson, 189 F.3d 1201, 1212 (10th Cir. 1999)).  Be that as it may as to some indicia, the court has substituted the district court's assessment of the facts with its own as to the remaining indicia.  For example, in support of its enhancement, the district court found Mr. Rubio-Sepulveda "coordinat[ed] runners and street-level dealers, who met the runners to obtain narcotic inventory."  9 R. 299.  The court's examination of the record led it to attribute this to Mr. Rubio-Sepulveda's "supplier" role.  But the district court could just as readily find that, when sellers "request[ed] and receiv[ed] numerous drug deliveries from Mr. Rubio-Sepulveda," he was performing an organizer or leadership role.  7 R. 660.  Indeed, the court all but admits the evidence is equivocal when it notes the record "strongly suggests," but does not definitively conclude, Mr. Rubio-Sepulveda was a mere supplier.

I also disagree that the district court clearly erred in finding Mr. Rubio-Sepulveda set drug prices, a critical determination on review.  The plea agreement states, "Mr. Rubio-Sepulveda directly communicated with his customers as to drug quantities, prices and payment."  2 R. 290.  The court, relying on a dictionary, argues Mr. Rubio-Sepulveda's admission has but one reasonable construction: he did not set drug prices, but instead merely imparted information as to drug prices.  Yet "communication" need not be construed so narrowly.  Under the definition relied upon by the court — to "impart

2

or pass on (information, news, or ideas)" — one could arguably either impart one's own orders or convey messages from others. At oral argument, even Mr. Rubio-Sepulveda's counsel could only speculate that his admission meant "he <u>may</u> have relayed the prices, he <u>may</u> have negotiated . . . [h]e <u>may</u> have gotten [the prices] from somebody else, he <u>may</u> have said, 'this is what we're going to sell it for.'" Oral Arg. at 8:53–9:09 (emphasis added). At best then, Mr. Rubio-Sepulveda's admission that he "communicated" prices is ambiguous. Certainly, his admission could have meant he was but a middle-man, transmitting prices set from on high. But it is not beyond the pale to understand him, as the district court did, as admitting to setting resale prices. <u>See</u> 9 R. 299. Our court should not second-guess the district court's choice of inferences derived from the evidence. <u>See</u> <u>United States v. Pikyavit</u>, 527 F.3d 1126, 1130 (10th Cir. 2008).

This case is readily distinguishable from previous cases in which we have held § 3B1.1(a) enhancements were clearly erroneous. For example, in <u>United States v. Anderson</u>, the district court itself noted it lacked a clear understanding of the various roles in the criminal conspiracy, and that there was very little evidence as to how the drugs were distributed on the street. 189 F.3d at 1212. On review, all we could glean from the record was that the defendant was, without question, a mere drug supplier. <u>Id.</u> Furthermore, in <u>United States v. Owens</u>, the district court supported its § 3B1.1(a) enhancement with a finding that the defendant supplied large quantities of drugs and claimed a larger share of the profits. 70 F.3d 1118, 1128 (10th Cir. 1995). Yet on appeal, we found no evidence that the defendant in fact received a larger share of the profits, leaving only evidence of his role as a drug supplier. <u>Id.</u> at 1129. And in <u>United</u>

3

States v. Torres, we noted the presentence report simply stated the defendant was "a leader in a criminal organization that involved five or more participants," and that while the defendant was an important member of the criminal conspiracy, there was no evidence as to his control over the manner or place of delivery or, relevant here, his setting drug prices. 53 F.3d at 1143.

To be sure, this court's view of the evidence is plausible. But on clear error review we should defer to the district court's findings absent a firm conviction it has erred. United States v. Lozano, 921 F.3d 942, 946 (10th Cir. 2019). The record's ambiguity cautions against second-guessing the district court's determinations. Finding no clear error, I would affirm.[1]

---

[1] I would also hold that Mr. Rubio-Sepulveda's other sentencing-based appellate challenges — that his sentence was substantively unreasonable and that the sentencing court should have continued the sentencing hearing to allow for more time to prepare — are without merit.